[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff herein, Robert Taylor, alleges that while attempting to cash a Workers' Compensation check at the defendant Bank of Boston's Milford Branch, he was treated in such a manner by the bank's employees that he was caused to suffer great pain, humiliation and emotional distress. (See plaintiff's Complaint).
Upon presenting the check to be cashed, he offered as an identification his photo identification card from his employer, the Connecticut Department of Corrections. This identification was contained within his wallet which was placed upon the counter. Since the amount of the check was beyond the authority of the teller who was a trainee and the fact that the plaintiff would not remove his identification from his wallet, she sought the advice of her superiors.
The branch manager approached the plaintiff and asked him to step out of the line. At this time, the plaintiff CT Page 1167 alleges that the manner and conduct of the manager was loud and abusive so as to embarrass the plaintiff. He refused to step from the line and, after several minutes of this exchange and he feeling that he was being singled out as one attempting to perpetrate a fraud upon the bank, he asked that she call the police. The manager would not make the call but directed him to an available phone.
Upon their arrival, the police spoke with both parties. The manager was asked if she wished to have him removed from the premises to which she replied in the negative. She further indicated to the police that the bank was willing to cash the check upon a showing of the required identification. The plaintiff refused the offer and upon leaving made reference to the bringing of a lawsuit.
There were several witnesses to the incident including several bank employees, some of whom at the time of trial were no longer employees of the bank. Also testifying was a Father Cronin who was a customer of the bank and present during the incident. His testimony as well as the testimony of the employees was that the manager of the bank at no time raised her voice but that the plaintiff, however, did raise his voice, becoming very argumentative and loud so much so that Father Cronin was embarrassed to be present during the incident.
The court, in examining the plaintiff's complaint, notes that one of the plaintiff's claims is that the "actions of the defendant's employees was actionable in that they caused the plaintiff great harm, humiliation and emotional distress." (See ¶ 12, plaintiff's Complaint). The plaintiff in his brief refers only to the intentional infliction of emotional distress. Any other claims the court therefore considers to be abandoned.
Both parties rely heavily on the case of DeLaurentis v.New Haven, 220 Conn. 225. The court held that "[i]n order for the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was CT Page 1168 the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is usually calculated to cause and does cause mental distress of a very serious kind. . . . Thus the intent to cause injury is the gravamen of the tort." DeLaurentis v. New Haven,220 Conn. 225, 266-267. (Internal quotations and citations omitted.)
The court finds that the Branch Manager had no intent to cause the plaintiff any emotional distress nor could she nave seen that he would suffer any emotional distress. The court does not find that her conduct was extreme or outrageous nor did the plaintiff suffer any severe distress. At best, the plaintiff might have been agitated. He sought no medical help but merely isolated himself for a couple of hours at home. While his wife testified that he was spending less time with his children, it should be noted that at the time of the incident he was not working due to a work-related injury and he is now employed. This would of itself limit the time available for him to be with his children. Furthermore, he returned to the same branch shortly thereafter and completed that particular transaction without incident, thus making his claim of emotional distress circumspect.
The court finds for the defendant herein and judgment may enter accordingly.
The Court
By
Curran, J.